UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHEKARDSAIN MERCILIEN,<br>Petitioner,<br>v.<br>TONYA ANDREWS, *et al.*,[1]<br>Respondents. | Case No. 1:26-cv-8087-TLN-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Richekardsain Mercilien entered the United States with permission pursuant to a humanitarian parole program on February 7, 2024. Immigration authorities detained him on August 21, 2026, when they were operating a "roving patrol operation" and believed his car was registered to an "illegal alien." Petitioner, though counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241 alleging that his detention violates due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner entered the United States through Haitian Humanitarian Parole ("HHP") on February 7, 2024. ECF No. 1-2; ECF No. 5-1 at 4. This process required petitioner to apply for humanitarian parole from abroad through a supporter in the United States who agreed to provide

[1] Defendant Andrews is automatically substituted for Garrett Ripa. *See* Fed. R. Civ. P. 25(d). The Clerk of Court is directed to update the docket with the updated defendant.

financial support for the duration of petitioner's parole period. *See* Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1243, 1244, 2023 WL 121510 (Jan. 9, 2023). Petitioner was required to "pass national security, public safety, and public health vetting prior to receiving a travel authorization." *Id.* Once approved, petitioner had to arrange a flight to the United States and seek entry. *Id.* The parole period would enable petitioner "to seek humanitarian relief or other immigration benefits for which [he] may be eligible, and to work and contribute to the United States." *Id.*

On March 29, 2025, petitioner applied for asylum and other forms of humanitarian relief. ECF No. 1-3. His HPP period expired on June 12, 2025.[2] ECF No. 5-1 at 4. A Form I-213 completed by a Border Patrol Agent indicates that petitioner had received temporary protected status ("TPS"), which had been terminated.[3] ECF No. 5-1 at 4.

On August 21, 2026, immigration authorities were conducting "roving patrol operations" when they saw a vehicle that they "suspected of being driven by an illegal alien." ECF No. 5-1 at 4. Petitioner was the registered owner of the car. *Id.* Border Patrol stopped the car, detained petitioner, and issued him a notice to appear ("NTA") in immigration court. ECF No. 5-1 at 4; ECF No. 5-2 at 2. The NTA stated that petitioner had previously been admitted to the United States and paroled after inspection through the HPP program and also alleged that he was present in the United States without being admitted or paroled. *Id.* On September 4, 2026, ICE amended the NTA to categorize petitioner as an "arriving alien." ECF No. 5-5 at 1. The government confirms that petitioner is being treated as an "arriving alien" under 8 U.S.C. § 1225(b). *See* ECF No. 5 at 3-5. ICE is mandatorily detaining petitioner under that section without an opportunity

---

[2] On March 25, 2025, the Department of Homeland Security ("DHS") terminated the parole process under which petitioner entered the United States. *See* Termination of Parole Processes for Cuban, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611, 2025 WL 894696 (March 25, 2025).

[3] TPS is a different type of protected status granted to certain noncitizens based upon the conditions in their home countries. DHS designated Haiti for TPS on August 3, 2021. *See* Designation of Haiti for Temporary Protected Status, 86 Fed. Reg. 41863, 2021 WL 3288247 (Aug. 3, 2021). DHS terminated that designation on November 28, 2025. *See* Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 54733, 2025 WL 3297267 (Nov. 28, 2025).

for bond. ECF No. 1 at 8. Petitioner has no criminal history. ECF No. 5-1 at 4.

**Procedural History**

On August 28, 2026, petitioner filed a petition for writ of habeas corpus, through counsel, in the Southern District of Florida where he was detained. ECF No. 1. The court ordered respondents to show cause why the petition should not be granted. ECF No. 3. Respondents filed a response on September 4, 2026. ECF No. 5. The Southern District of Florida transferred the case on October 1, 2026, as petitioner had been transferred to a detention facility in this District on August 30, 2026. ECF No. 9; *see also* ECF No. 5-4 at 2. The court referred the matter to me, ECF No. 14, and, after providing the parties with an opportunity for additional briefing, ECF No. 15, the matter has been submitted.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his detention violates the Due Process Clause. ECF No. 1 at 10. Respondents argue that petitioner is an "arriving alien" who may be mandatorily detained under section 1225(b)(2). ECF No. 5 at 3-5. Notably, respondents do not address petitioner's due process claim. *See* ECF No. 5.

The Court of Appeals has rejected respondent's argument that section 1225(b) applies to noncitizens who are detained by ICE in the interior of the United States. *See Rodriguez Vazquez*

*v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026).[4] This holding accords with five other Courts of Appeals. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026).

Respondents attempt to distinguish the reasoning in these cases by arguing that they only apply to immigrants who are "discovered in the interior," whereas immigration authorities allowed petitioner into the United States through humanitarian parole.[5] ECF No. 5 at 3. To the contrary, the Courts of Appeals in *Rodriguez Vazquez* and *Hernandez Alvarez* do not limit their rulings in this way. Rather, in *Rodriguez Vazquez*, the Court of Appeals held that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." 183 F.4th at 1165; *see also Hernandez Alvarez*, 175 F.4th at 1262 (holding that "no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here"). Petitioner fits squarely in the holding of *Rodriguez Vazquez* as his humanitarian parole into the United States is not an "admission" under the Immigration and Nationality Act, *see* 8 U.S.C. § 1101(a)(13)(B), *see also* 8 C.F.R. § 1.2, and he was apprehended in the interior of the United States.

Further, respondents' argument—that petitioner's detention is lawfully governed by section 1225 does not address whether his detention without a pre-deprivation hearing violates the Fifth Amendment. *See* ECF No. 1 at 10. Accordingly, I will address petitioner's due process argument.

---

[4] Because the mandate has yet to be issued, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41.

[5] As this matter was briefed in the Southern District of Florida, respondents argued that the Eleventh Circuit Court of Appeals case, *Hernandez Alvarez*, 175 F.4th 1258, should be distinguished on this basis. *See id.* at 3. Their argument is consistent with similar arguments made against the application of *Rodriguez Vazquez*, which is binding law in this District. I provided respondents an opportunity to file supplemental briefing in matter, but none was filed. *See* ECF No. 15.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Petitioner has a liberty interest in his continued freedom protected by the Due Process Clause based on his legal entry into the United States on humanitarian parole. *See Wistong F. v. Immigr. & Customs Enf't*, No. 1:26-cv-03399-TLN-DMC, 2026 WL 1361794, at *2 (E.D. Cal. May 15, 2026). Pursuant to the parole process for Haitian immigrants, *see* 88 Fed. Reg. 1243, immigration authorities pre-authorized petitioner to fly to the United States and apply for entry, which they granted on February 7, 2024. ECF No. 1-2; ECF No. 5-1 at 4. Petitioner lived in the United States for over two years prior to his detention by ICE on August 21, 2026. ECF No. 5-1 at 4. Petitioner's entry into the United States under the pre-approved grant of humanitarian parole and his time out of custody since his legal entry have created a substantial constitutionally protected liberty interest in continued release.[6] *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Further, the Form I-213 indicates that petitioner received temporary protected status. *See* ECF No. 5-1 at 4. Courts have found that TPS confers a liberty interest in being free from detention that is afforded procedural due process protection. *See Morales Jimenez v. Warden*,

---

[6] "Petitioner's liberty interest did not expire along with his parole." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025); *see also Kelati v. Chestnut*, No. 1:26-cv-3333-DAD-CSK, 2026 WL 1363088 at *2 (E.D. Cal. May 15, 2026); *Nath v. Chestnut*, No. 1:26-cv-1800-DC-CKD, 2026 WL 743356 at *1 (E.D. Cal. Mar. 17, 2026).

No. 1:26-cv-2867-DAD-AC, 2026 WL 1075841, at *1 (E.D. Cal. Apr. 21, 2026); *Majano Mendoza v. Andrews*, No. 1:26-cv-1976-DAD-CSK, 2026 WL 747344, at *2 (E.D. Cal. Mar. 17, 2026); *see also Hernandez Lazo v. Noem*, 818 F. Supp. 3d 328, 346 (E.D.N.Y. 2026). This is because petitioner's receipt of TPS reflects a prior determination that he was not flight risk or a danger to the community. *See Morales Jimenez*, 2026 WL 1075841, at *1. For these reasons, I find that petitioner has a liberty interest in his continued release.

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over several years after his entry on humanitarian parole and during his TPS. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. As a beneficiary under the Haiti parole process, petitioner was required to apply for the process from outside the United States and pass national security, public safety, and public health vetting prior to being approved to fly into the United States to seek entry. *See* 88 Fed. Reg.

at 1244. The implementing regulations require that a noncitizen "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Thus, if a noncitizen has been granted humanitarian parole, it means that a DHS official decided that the individual did not pose a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b); *see also Castellano v. Blanche*, No. 2:26-cv-0124-GMN-BNW, 2026 WL 1414049, at *2 (D. Nev. May 20, 2026). Accordingly, "[r]elease [on humanitarian parole] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see also Omer G.G.*, 815 F. Supp. 3d at 1104.

Further, prior to granting petitioner TPS, the government necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Morales Jimenez*, 2026 WL 1075841, at *1; *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards have been employed following petitioner's detention; more generally, their mandatorily detention of petitioner gives the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See* ECF No. 5 at

5. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release or a bond hearing. ECF No. 1 at 2. Respondents do not discuss the matter. ECF No. 5.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id.* at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025). Moreover, where the government has erroneously applied section 1225(b) to a petitioner, courts have ordered

immediate release. *See, e.g.*, *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025); *Cortes Cortes v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP, 2026 WL 2494984, at * 3 (E.D. Cal. Aug. 25, 2026); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-5661-DAD-SCR, 2026 WL 2294963 (E.D. Cal. Aug. 10, 2026). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted). This supports petitioner's immediate release from custody.

Here, petitioner was arrested in August 2026 because a roving group of immigration agents believed that his car might be registered to an "illegal alien." ECF No. 5-1 at 4. Petitioner has no criminal history, and there is no indication that he failed to comply with any terms of his parole. *See* ECF No. 5-1 at 4. Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for detaining petitioner without a pre-deprivation hearing.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 233-774-285) from their custody. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Golden State Detention Facility with a copy of

this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: October 16, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE